UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| SAMUEL CULOTTA #199539 | CIVIL ACTION NO. 21-cv-0567 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| CINDY HOLLEY, ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Samuel Culotta ("Plaintiff"), who is self-represented, is an inmate now housed at the Morehouse Parish Detention Center. He complains that his civil rights were violated when he was housed in the Bossier Parish Maximum Security Jail in 2020. The named defendants are the Bossier Parish Police Jury, Bossier Parish Sheriff Julian Whittington, Deputy Gates, Deputy Porter, Nurse Cyndi Holley, and Dr. Vincent Lococo. The court earlier granted Dr. Lococo's motion to dismiss all claims against him. Docs. 58 & 67.

Sheriff Whittington, Deputy Gates, and Deputy Porter ("the BSO Defendants") have filed a Motion for Summary Judgment (Doc. 74) that asserts a defense of failure to exhaust administrative remedies and challenges the claims on the merits. Nurse Cyndi Holley and the Bossier Parish Police Jury present a Motion for Summary Judgment (Doc. 71) that attacks the merits but does not raise an exhaustion defense. Despite notice and opportunity, Plaintiff has not filed any opposition to either motion. For the reasons that follow, it is recommended that the motions be granted and that all remaining claims in this civil action be dismissed.

**Plaintiff's Allegations**

Plaintiff's second amended complaint (Doc. 11) restated his claims, from top to bottom. Therefore, for the reasons explained in the Report and Recommendation (Doc. 58) regarding Dr. Lococo, the second amended complaint provides the relevant facts for assessment of Plaintiff's claims. Boelens v. Redman Homes, Inc., 759 F.2d 504, 508 (5th Cir. 1985) (an amended complaint ordinarily supersedes the original and renders it of no legal effect); McDonald v. McClelland, 779 Fed. Appx. 222, 225 (5th Cir. 2019) (applying the rule in pro se case).

Plaintiff alleged that, in November 2020, he heard that someone in the jail had Covid-19. He made requests on November 30, December 2, and December 5 to be tested for Covid-19, but nurses told him that he did not have Covid-19 (or would not be tested; the allegations are unclear) because his temperature did not exceed 101 degrees. Plaintiff asked if there was any other way he could be checked, and he was told no because his temperature was not high enough. Plaintiff alleged that he told the nurses that he had Covid-19 and was sick, and they knew that he had a history of COPD and emphysema. Plaintiff asserted that the nurses should have placed him "on the doctor list," done more tests on him, and removed him from the F pod where Covid-19 was present.

Plaintiff alleged that the sheriff, police jury, and an unspecified "health services administrator" should have been informed that Covid-19 was in the jail. Plaintiff stated that officials "fabricated that Covid-19 was not in the jail" and said there was no risk because inmates had to wear masks and go by CDC rules.

About three weeks after Plaintiff demanded he be tested, December 26, 2020, a deputy came to F pod and informed the inmates that they all had to take a Covid-19 test, the test for which Plaintiff had been begging. Plaintiff alleged that he "could not get the test because it hurt going up his nose." He refused the test, so he was sent to lockdown for 15 days.

Plaintiff alleged that he got in a fight in March 2021 and was sent to segregated confinement. He noticed that "people off the street" were coming straight to that area for quarantine, which returned Plaintiff to a "covid 19 setting." He expressed concern that he could have been exposed during his 23 days in segregation. He also complained that he had not been sent to an "outside lung doctor to see what is wrong with him."

Plaintiff alleged that the nurses did not address his complaints about breathing problems, provide him vitamin C, refer him for outside care, or grant his request for a blanket. He said that they knew of his COPD and emphysema, but they did not look into getting him an X-ray. Plaintiff claimed that he "could not get any kind of medical care" at the jail.

The next portion of the amended complaint returned to the allegations that the nurses merely checked Plaintiff's temperature in response to his many sick call requests to be tested for Covid-19. He alleged that the police jury did not yet have federal funds to pay for tests and did not want to pay out of pocket. Near the end of the amended complaint, under a heading for Claims for Relief, Plaintiff alleged that the defendants showed "that they did not care about inmate health or safety by persistent failure to respond to the obvious complaint and symptoms of the first case or cases, the failure to advise inmates of

their exposure to Covid 19." Plaintiff went on to fault the defendants for not developing a policy or protocol for the situation and for their failure to test all inmates.

Plaintiff ended his amended complaint by asking for specific forms of relief against specific defendants. For example, he asked that Nurse Holley be ordered to screen every new inmate for their temperature and recent illness, then put them in E pod for two weeks before entering the general population. He asked that Deputy Porter reserve E pod for new inmates only, and that Porter pay him $100,000 for not moving Plaintiff to a pod where there was no Covid-19.

**BSO Defendants; Failure to Exhaust Administrative Remedies**

The BSO Defendants (Whittington, Gates, and Porter) move for summary judgment on the grounds that Plaintiff did not properly exhaust his administrative remedies before filing suit. A statute, 42 U.S.C. § Section 1997e(a), provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The statute applies to actions such as this that allege denial of proper medical care. Valentine v. Collier, 978 F.3d 154, 160-62 (5th Cir. 2020) (prisoner who complained of Covid-19 response had to exhaust administrative remedies before filing suit).

A Louisiana statute imposes a similar requirement for state law claims. La. R.S. 15:1184(A)(2) ("No prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted."). The relevant definitions of prison and prisoner show that the law applies to pretrial detainees in a local jail. § 1181(5)

Page 4 of 13

& (6). "If a prisoner suit is filed in contravention of [the exhaustion requirement], the court shall dismiss the suit without prejudice." § 1184(A)(2). Dismissal without prejudice is also proper for unexhausted federal claims. Bargher v. White, 928 F.3d 439, 447 (5th Cir. 2019).

The BSO Defendants submit an affidavit from Major Stokes, the jail administrator, who testified that Plaintiff was booked into Bossier Max on May 19, 2020. Plaintiff was provided a copy of the inmate handbook, and he was given 24-hour access to an electronic copy of the handbook, available at two kiosks and approximately 12 tablets in each dorm. A copy of the handbook shows that the jail has a two-step grievance procedure for use by all inmates, and the handbook tells them that they are "required to use the ARP procedure before they can proceed with a suit in federal and state courts." Step one is to file a grievance in writing within 90 days after an incident has occurred. Step two is an appeal to the major of corrections. The handbook states that if an inmate is not satisfied with the second step response, "they may file suit in district court."

Major Stokes attached to his affidavit a copy of a grievance filed by Plaintiff, and he certified that a diligent check of the records revealed no other grievances or appeals by Plaintiff with respect to the claims at issue in this action. Plaintiff's grievance was filed in February 2021 and complained that he asked to see the doctor "about 10 times" in the last three months but never saw him. He also complained that he had asked to have his lungs X-rayed to assess damage from Covid-19. The step one response stated that the grievance was unfounded because inmates are placed on a doctor call list by nursing staff, and inmates do not dictate the particular care such as an X-ray. The response told Plaintiff that if he

was not satisfied with it, he could "go to Step Two by checking below and forwarding to the ARP Screening Officer (Lt. Porter) within 5 days of your receipt of this decision." He was advised that step two would be answered by Captain Boyer, and his answer would be final. A space was provided for Plaintiff to indicate he was not satisfied with the response and wished to proceed to step two. He did not complete that portion of the form, and there is no indication that he proceeded to step two by any means.

Failure to exhaust is an affirmative defense, and the burden is on the moving defendant to demonstrate that the inmate failed to exhaust available administrative remedies. Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). An inmate is required to properly exhaust a claim, which means that he must pursue a grievance to conclusion in accordance with the agency's deadlines and procedural rules. Bargher, 928 F.3d at 446-47 (failure to proceed to step two was not proper exhaustion).

Plaintiff alleged in his original complaint (Doc. 1, p. 2) that he filed step one and step two grievances that were "never answered – never returned." He also alleged in his amended complaint (Doc. 11, p. 11) that he "has exhausted his administrative remedies with respect to all claims and all defendants." The BSO Defendants responded to those allegations with competent summary judgment evidence which reflects that Plaintiff did not properly exhaust his administrative remedies. There is no competing evidence from Plaintiff, so the BSO Defendants have met their burden and are entitled to summary judgment on the exhaustion defense. Teixeira v. Gregg Cnty. Jail, 74 Fed. Appx. 388, 389 (5th Cir. 2003) (inmate's unsubstantiated assertion that he filed an administrative appeal is insufficient to sustain his summary judgment burden when defendants presented evidence

that he did not pursue his grievance beyond step one); Bolden v. Cox, 2014 WL 7005912, *4 (W.D. La. 2014) (summary judgment granted, despite allegation in complaint of exhaustion, when defendants produced summary judgment evidence to the contrary). Because dismissal is appropriate for this reason, the court need not address the BSO Defendants' argument that the grievance was untimely or that the claims fail on the merits.

**Nurse Cyndi Holley and Police Jury**

    **A. Elements of Claims**

Plaintiff, who was a pretrial detainee during the relevant time, asserts federal and state law claims. To succeed on a federal claim under 42 U.S.C. § 1983 of failure to provide proper medical care, a detainee must establish that law enforcement responded to the detainee's serious medical needs with deliberate indifference. Williams v. City of Yazoo, 41 F.4th 416, 423 (5th Cir. 2022). To prove deliberate indifference, the detainee must show that a defendant "knew that he faced a substantial risk of serious harm and failed to take reasonable measures to abate that risk." Id. The knowledge inquiry is subjective, and the reasonableness question is objective. Id. "Deliberate indifference is an extremely high standard to meet." Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

Plaintiff also asserted Louisiana law negligence claims. Louisiana enacted an immunity statute, effective March 11, 2020, that puts a heavy burden on a claimant who asserts a claim based on exposure to Covid-19. It states:

> No natural or juridical person, state or local government, or political subdivision thereof shall be liable for any civil damages for injury or death resulting from or related to actual or alleged exposure to COVID-19 in the course of or through the performance or provision of the person's, government's, or political subdivision's business operations unless [they] failed to substantially comply with the applicable COVID-19 procedures established by the federal, state, or local agency which governs the business operations and the injury or death was caused by [their] gross negligence or wanton or reckless misconduct.

La. R.S. 9:2800.25

Cyndi Holley, an RN, testifies in an affidavit that she worked as a nurse at Bossier Max from 2018 to 2022. Molli Lyles, an LPN, also offers an affidavit and testifies that she has worked in the medical unit at Bossier Max since 2019. Both testify that they are employees of the Bossier Parish Police Jury. The Police Jury represents in its statement of undisputed material facts that it provides staff for the medical unit at Bossier Max.

The nurses explain in their affidavits that Bossier Max generally houses between 400 and 430 inmates, the vast majority of whom are pretrial detainees. There are multiple full-time and part-time medical staff members, and at the time relevant to Plaintiff's claims the Police Jury had Dr. Lococo making visits and available on call at all times. Both nurses were also on call at all times to answer questions from the medical staff. New inmates were given a medical intake screening, and the staff explained to them the process for submitting a written medical attention request (known as a kite) to the medical unit. Medical staff conducted sick call twice per day.

With respect to Covid-19, the nurses explain that the Police Jury had a policy even before the pandemic that required decontamination of medical and dental equipment after use. The policy also called for the transfer of an inmate outside the facility for care if his

medical problems could not be treated by personnel in the medical unit. When the Covid-19 pandemic began, medical unit personnel put in place a set of policies specific to the pandemic to mitigate the spread of the virus. This included education of inmates, provision of masks, and recommendation regarding precautions for inmates. The inmates were instructed to submit a kite if they experienced Covid-19 symptoms. A standing order issued by Dr. Lococo directed that an inmate would be tested for Covid-19 if he had both (1) a fever equal to or greater than 100.3 degrees and (2) at least one other symptom (e.g., cough, shortness of breath, body aches, or malaise).

Nurse Holley testified that there were not a significant number of inmates at Bossier Max who tested positive before December 2020. One inmate who was already hospitalized tested positive at the hospital in August 2020, but the first positive test of an inmate housed in the jail was in November 2020. The standing order took effect in December 2020, and several inmates did test positive at about that time. In late December, a strike team from Ochsner LSU Health Shreveport came to the jail and tested large numbers of inmates.

Nurse Holley testified that Plaintiff received extensive medical evaluation and treatment at Bossier Max during the November-December 2020 period described in his complaint. Those services were provided by multiple nurses, Nurse Holley, and Dr. Lococo. Holley stated that, to the best of her recollection, Plaintiff never tested positive for Covid-19 while housed at Bossier Max. In March 2021, medical staff made a Covid-19 vaccine available to inmates.

Defendants have submitted almost 500 pages of Plaintiff's medical records from the months he spent as an inmate at Bossier Max. A detailed description of the various

complaints, medical unit visits, and treatments provided are set forth in their memorandum. Doc. 68-3, pp. 5-16. The initial medical intake screening showed that Plaintiff was 53 years old with hypertension, COPD, hepatitis A, and an irregular heartbeat. Plaintiff reported a history of seizures, depression, hallucinations, a recent suicide attempt, and a history of taking a variety of illegal drugs.

From May 2020 through November 29, 2020, Plaintiff was seen by medical staff dozens of times for a variety of medical and mental health issues. He received 32 breathing treatments. Plaintiff alleged that he told staff on November 30, 2020 that he had Covid. The medical records do not support that claim. Plaintiff did receive a breathing treatment that day. The records also do not support the claim that Plaintiff put in a medical request related to Covid on December 2, 2020. He did receive other care that day.

Plaintiff submitted a kite on December 6, 2020 stating that he needed to go to sick call because he experienced aches, fever, and Covid-19. He was seen the next day by medical staff. His temperature was 98.8 degrees, and examination indicated no reason for testing. In the days that followed, Plaintiff continued to receive breathing treatments, cold medication, cough drops, and other care. He again demanded Covid-19 testing on December 21, 2020, and he was examined by medical staff that same day. His temperature was 98.9 degrees, and the examination did not indicate symptoms of Covid-19. Plaintiff was thereafter treated for complaints of chest pain, an abscess, and other matters.

The Covid-19 strike team came to the jail on December 26, 2020 to test inmates. Plaintiff refused the test because it hurt going up his nose, so he was placed in quarantine. He eventually submitted to a test on January 2, 2021. It was negative. From that day until

March 24, 2021, Plaintiff was seen by medical staff almost every day for complaints ranging from hemorrhoids to back pain to pimples and fingernail trims. Nothing in the records indicates that medical staff suspected that Plaintiff had Covid-19 or complications from it, and his lung function was checked often. This sort of frequent care continued until Plaintiff left Bossier Max on June 14, 2022.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The movants shouldered their summary judgment burden of presenting evidence that squarely challenged the key aspects of Plaintiff's complaint regarding his medical care during the relevant time. Plaintiff then had the burden to respond with competent summary judgment evidence sufficient to create a genuine dispute of material fact, but he filed nothing. A plaintiff in this position must go beyond his pleadings and offer his own summary judgment evidence, or summary judgment for the movant is appropriate. Renfroe v. Parker, 974 F.3d 594, 599 (5th Cir. 2020).

The uncontested summary judgment evidence submitted by the movants provides no basis for a fact finder to determine that Nurse Holley or the Police Jury, whether through action or policy, acted with deliberate indifference to a serious medical need. There is also no basis to find that they acted with gross negligence or wanton or reckless misconduct as would be required to overcome the Louisiana immunity statute. There is not even a basis to find ordinary negligence or medical malpractice. The affidavit testimony and medical records establish that Plaintiff received abundant medical care and was afforded reasonable protection from Covid-19. There is no indication that he ever contracted the virus or

suffered any ill effects from it. For these reasons, Nurse Holley and the Police Jury are entitled to summary judgment on all federal and state law claims against them.

Accordingly,

It is recommended that the Motion for Summary Judgment (Doc. 71) by Cyndi Holley and the Bossier Parish Police Jury be granted and that all federal and state law claims against them be dismissed with prejudice. It is further recommended that the Motion for Summary Judgement (Doc. 74) by Sheriff Whittington, Deputy Gates, and Deputy Porter be granted and that all federal and state law claims against them be dismissed without prejudice for failure to exhaust administrative remedies before filing suit.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of February, 2023.

_____
Mark L. Hornsby
U.S. Magistrate Judge